OPINION
{¶ 1} On November 12, 1983, appellant, Treva Graber, and appellee, Robert Graber, were married. On June 1, 2003, appellee filed a complaint for divorce. Hearings were held on March 23 and June 28, 2004. By final entry filed July 21, 2004, the trial court granted the parties a divorce and divided their assets.
 {¶ 2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 3} "The trial court erred in finding that a marital contribution of $35,000 for payment of the mortgage on a property with a $56,000 value at the time of the marriage did not create marital property in proportion to the martial contribution as the property appreciated."
 II {¶ 4} "The trial court erroneously reduced the defendant/appellant's share of marital property based upon alleged financial misconduct, when the evidence did not show any loss to the plaintiff/appellee because of the defendant's segregation of marital funds prior to the divorce without the plaintiff's knowledge, and it was therefore unnecessary to `compensate' the plaintiff/appellee."
 III {¶ 5} "The trial court erred by not finding that the cellular tower lease was marital property, as the joint efforts of the parites in furthering the family business and all of the family activities during the marriage caused that increased value or created that asset as marital property."
 IV {¶ 6} "The trial court erred by not awarding the defendant even one motor vehicle, when the plaintiff was awarded two motor vehicles and a half interest in her vehicle."
 V {¶ 7} "The trial court erred by awarding the vacant west main street property valued at $5,000 all to the plaintiff/appellee, as such property was purchased during the marriage and the purchase consideration could not be traced to separate property of the plaintiff/appellee."
 VI {¶ 8} "The trial court erred by awarding the antique CrissCraft boat totally to the plaintiff/appellee."
 {¶ 9} Each of these assignments of error challenge the trial court's determination on the division of property. In order to review these challenges, we note the trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion.Holcomb. v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 I {¶ 10} Appellant claims the trial court erred in finding the marital contribution for Akron Road rental properties in Florida to be $35,000. Appellant claims the marital contribution should be the amount of appreciated value to the properties during coverture. We disagree.
 {¶ 11} It is undisputed that appellee owned the Akron Road properties prior to his marriage to appellant. Vol. I T. at 122-123, 149, Vol. II T. at 61; Exhibit 1. The mortgage of $35,000 was paid off during the marriage. Vol. I T. at 149. These properties were rental properties and neither was the Florida marital residence of the parties. Id. at 149-151. In the two years prior to the divorce, the parties had spent only three and a half to five months in Florida at a residence on Ohio Road. Id. at 131.
 {¶ 12} "Separate property" as defined in R.C. 3105.171(A)(6)(a) "means all real and personal property and any interest in real or personal property that is * * * acquired by one spouse prior to the date of the marriage" and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage."
 {¶ 13} It is clear from the trial court findings that the Akron Road properties did not transmute from separate property to marital property. These properties were rental properties and the only testimony as to any marital contribution to these properties was the payoff of the mortgage.
 {¶ 14} Upon review, we find the trial court did not abuse its discretion in setting the marital property amount at $35,000 on the Akron Road properties.
 {¶ 15} Assignment of Error I is denied.
 II {¶ 16} Appellant claims the trial court erred in finding she was guilty of financial misconduct regarding her segregation and use of some $38,000 in marital funds. We agree in part.
 {¶ 17} Pursuant to R.C. 3105.171(E)(3), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A determination on financial misconduct lies in the trial court's sound discretion. Huener v. Huener
(1996), 110 Ohio App.3d 322; Blakemore.
 {¶ 18} Appellant freely admitted that during the parties' separation, she took $38,614 in marital funds of which $16,000 came from a Washington Mutual account. Vol. I T. at 39-40. She placed the amount in her separate account in order to secure herself because "I was just scared of him, I didn't know how long our marriage was going to last." Id. at 39. Appellee removed appellant from the credit card accounts when she went out west. Vol. II T. at 70.
 {¶ 19} Appellant argues she should not be charged with financial misconduct because in the original temporary orders, the trial court permitted appellant to draw on the funds for spousal support. We note the funds in question were clearly marital funds. Also, there was a great flurry of evidence presented regarding allegations of missing cash from appellee's business safe which the trial court rejected. See, July 21, 2004 Final Entry at Finding of Fact No. 13.
 {¶ 20} By order filed August 22, 2003, the following temporary order was filed in response to appellant's June 27, 2003 request for temporary spousal support:
 {¶ 21} "Wife may use $2,000.00 per month from the $17,200 she w/drew from Washington Mutual Bank. Wife shall return the cash from the parties home safe, and the cash from the KeyBank w/drawls. These funds shall be placed in appropriate escrow account under the control of husband's counsel. Any w/drawl of those funds shall be per agreed entry or by application to the court. Husband shall account for his monthly expenditures from any business income and/or rental income. Wife shall provide a complete accounting of any non-recoverable funds from money taken by her accounting due in 30 days to def counsel."
 {¶ 22} On December 15, 2003, appellant filed a motion for spousal support pendente lite, claiming the $17,200 funds from the Washington Mutual account "have been largely exhausted." By order filed January 13, 2004, appellant's request was denied as the "Deft did not demonstrate a change of circumstances. Counsel characterized the Washington Mutual Account as `pretty much gone' and `basically been used'. Hence this account is not yet depleted." On April 5, 2004, appellant again requested a modification of spousal support. By judgment entry filed April 20, 2004, the trial court denied the motion.
 {¶ 23} Pursuant to the August 22, 2003 temporary support order, appellant was entitled to $2,000 per month for spousal support during the pendency of the divorce until it became final on July 21, 2004, some eleven months. Therefore, of the account funds, $22,000 was spousal support.
 {¶ 24} The $38,614 amount should be diminished by $22,000 for spousal support, leaving a balance of $16,614. As cited supra, appellant freely admitted to taking the $38,614, and did not comply with the August 22, 2003 order to return the "cash from the KeyBank w/drawls." While we acknowledge the $16,614 constitutes marital funds, only half of which belongs to appellee ($8,307), the trial court chose to punish appellant for her financial misconduct. Therefore, we find the appropriate amount for financial misconduct to be the account amount minus the spousal support amount ($16,614), and not the entire account amount of $38,614.
 {¶ 25} Assignment of Error II is granted in part.
 III {¶ 26} Appellant claims the trial court erred in not awarding her some percentage of a cellular tower lease negotiated during the marriage, located on business property of which the trial court found to be appellee's separate property. We disagree.
 {¶ 27} The trial court determined the $16,000 mortgage on the plumbing business property paid off during the marriage constituted marital property while the real estate and building were appellee's separate property. The trial court made no reference to any leasehold value in the cellular tower. The rental income from the tower was included on appellee's amended financial statement filed March 23, 2004 as income to appellee. As such, it was identified as income and included in the trial court's analysis on the issue of spousal support:
 {¶ 28} "The husband's current monthly gross income amounts to $1,400 per month. His expenses total $2,257 per month. While he has been a successful business man, his age and physical condition justify his retirement at this point. The wife is a nurse and in good health and is capable of obtaining employment. She is currently living with another man, who she testified has been paying all of her living expenses with the exception of her outstanding credit card bill." July 21, 2004 Final Entry at Conclusion of Law No. 8.
 {¶ 29} The trial court considered the plumbing business property to be appellee's separate property and determined the marital portion to be the $16,000 mortgage payments made during coverture, treating the business property the same as the Akron Road rental properties discussed supra. Because the trial court included the rental income from the tower in appellant's income and so used it to consider spousal support, we find the trial court did not abuse its discretion in not listing the lease as a marital asset.
 {¶ 30} Assignment of Error III is denied.
 IV, VI {¶ 31} Appellant claims the trial court erred in not awarding her one of the parties' vehicles or part of the value of an antique CrissCraft boat. We disagree.
 {¶ 32} It is the trial court's duty to equitably divide the parties' assets and not to balance the number of individual items. R.C. 3105.171(B). We find no error in an equitable distribution that does not balance specific items. As we are reminded by the Supreme Court in Briganti v.Briganti (1984), 9 Ohio St.3d, 220, piece meal appeals are not favored.
 {¶ 33} In addition, we note the trial court awarded appellant the vehicle she purchased following the parties' separation.
 {¶ 34} Assignments of Error IV and VI are denied.
 V {¶ 35} Appellant claims the trial court erred in awarding appellee the vacant West Main Street property valued at $5,000 as the property was purchased during the marriage and constituted marital property. We agree.
 {¶ 36} Appellee testified the lot, now a subdivided parcel, was purchased during the marriage. T. at 143.
 {¶ 37} R.C. 3105.171(A)(3)(a) defines "marital property" as follows in pertinent part:
 {¶ 38} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 39} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage."
 {¶ 40} Based upon this language and appellee's testimony, the trial court should have awarded half of its value ($2,500) to each party as marital property.
 {¶ 41} Assignment of Error V is granted.
 {¶ 42} The judgment of the Court of Common Pleas of Stark County, Domestic Relations Division, is hereby affirmed in part and reversed in part. The matter is remanded to said court to incorporate this court's decision into the property division and fashion an equitable distribution.
Farmer, J., Boggins, P.J. and Hoffman, J. concur.